UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBERT PAUL SULLINS
ADC# 151971                                                                                           PLAINTIFF

V.                               4:18CV00324 SWW/JTR

RANDY JULIAN, Special
Agent, Drug Task Force, *et al*.                                                            DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Introduction

Plaintiff Robert Paul Sullins ("Sullins") sued multiple individuals under 42 U.S.C. § 1983 in connection with the January 29, 2016 search of his home and subsequent arrest. *Doc. 2*. Beyond challenging the search and arrest, Sullins claimed he was denied proper medical care for injuries purportedly sustained during the search. *Id. at 8*. Sullins maintains Arkansas State Police Special Agent Jason Martin

("Martin") refused to send him to the hospital after a paramedic observed that Sullins's left pupil was slow to respond to light and advised that Sullins needed "to be taken to a hospital and cleared." *Doc. 2 at 7*. Only Sullins's personal-capacity deliberate indifference claim against Martin remains pending.[1]  *Docs. 5, 10*. Martin now seeks summary judgment.[2] *Docs. 41-43*. For the reasons explained below, Martin's Motion should be granted and this case should be dismissed.

## II. Discussion

Sullins's claim arises under the Fourteenth Amendment. *Awnings v. Fullerton*, 912 F.3d 1089, 1102 (8th Cir. 2019). In analyzing such claims, courts "[borrow] from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (internal citation omitted). For Sullins to prevail on his claim, he must prove that he had a serious medical need and that Martin knew of the need but deliberately disregarded it. *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). "A medical need is objectively serious if it has been 'diagnosed by a physician as requiring treatment'

---

[1] Sullins's official-capacity claim against Martin, barred by Eleventh Amendment immunity, was dismissed on July 13, 2018. *Docs. 5, 10*. On that same date Sullins's claims against Judge John Martin, Randy Julian, Brandon Chandler, and Randall Murphy were also dismissed. *Id*.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

or if it is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal citations omitted). To establish deliberate disregard, Sullins must show that Martin's mental state was akin to criminal recklessness. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).

Martin asserts that he is entitled to qualified immunity. *Doc. 43*. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal citations omitted). Determining whether qualified immunity applies involves two inquiries: whether the plaintiff's allegations make out the violation of a constitutional right and whether that right was clearly established at the time of the alleged unlawful acts. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "To overcome qualified immunity, a plaintiff must be able to prove that 'every reasonable official would have understood that what he is doing violates' a constitutional right . . . and that the constitutional question was 'beyond debate.'" *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015).

Considering the evidence in the light most favorable to Sullins, he has not established an objectively serious medical need. As Sullins testified at his deposition, during the search of his home an officer "[s]lammed [him] to the floor . . . on the left side of [his] face." *Doc. 41-1 at 4*. After the search, Sullins was arrested

for delivery of a controlled substance and possession of a firearm by certain persons, and was transported to the Brinkley fire station. *Id. at 5-6*. It is uncontested that there he complained of head pain to Martin, who called an ambulance. *Id. at 6*. While complaining to Martin, Sullins acknowledges he behaved belligerently; he was "cussing, ranting and raving" and "acting up." *Id. at 7*.

Once the ambulance arrived, Sullins told the paramedic he had been "slammed against a table." *Doc. 41-5 at 3*. Upon examination, the paramedic noted "a small hematoma to the right orbital area" that was tender to the touch. *Id*. Further noted was that Sullins's pupils were "pinpoint and nonreactive to light." *Id*. There were, however, "no other apparent injuries or life threats." *Id*. Sullins's vital signs were normal, he was not disoriented, and he was able to answer questions appropriately. *Id. at 2-3*. The paramedic assessed Sullins's neurological condition, speech, and mental status as "normal." *Id. at 2*. According to the "symptoms – injury" section of the paramedic's report, Sullins admitted drug use two days ago. *Doc. 41-5 at 2, 3*. The paramedic recommended transport to the hospital, a neck collar and backboard, and examination by a doctor, among other things. Sullins also wished to be transported to the hospital for an examination by a physician. *Doc. 41-5 at 3; Doc. 41-7*. An unidentified official with the Arkansas State Police refused transport. *Doc. 41-5 at 3*. Sullins received no further treatment and eventually was taken to the Monroe County Jail. *Doc. 41-7; Doc. 41-9*.

Once he was admitted to the Monroe County Jail, nothing in the record indicates Sullins complained about or sought treatment for the injury to his head. Sullins testified that at the Jail he complained to Steve Sullivan "about them beating me up," but "didn't tell him anything in particular." *Doc. 41-1 at 9*. Rather, Sullins asked Sullivan "about something to eat . . . ." *Id*. At the Jail, Sullins was asked a series of medical questions, including whether he had "any condition of any type that we need to know about to insure your proper care while you are incarcerated….If so, what?" *Doc. 41-9 at 3*. Sullins listed only hypertension. *Id*. And Sullins answered that there was no medical issue about which the officials at the Jail needed to know that had not been covered already. *Id*. Sullins explained in his Complaint that he experienced severe headaches for several months after his injury, *Doc. 2 at 8*, but there is no further information about how Sullins was harmed by Martin's alleged indifference.

In his Response to Martin's Motion, Sullins argues that

> [i]f the paramedics are to be believed, then Mr. Martin was advised of a *possible* head injury and he blatantly disregarded my safety and well being by denying me transportation to the hospital. The fact that a head injury was *possible* clearly meets the criteria that I suffered from an objectively serious medical need.

*Doc. 44 at 3*. (emphasis added).

Sullins did not present a doctor's diagnosis and his alleged head injury was not one easily recognizable to a layperson. Sullins's argument rests on the

paramedic's recommendation for transport to the hospital and evaluation by a doctor. *Id*. The Court of Appeals for the Eighth Circuit, however, has instructed that "[t]he statement of a paramedic that an arrestee needs . . . further evaluation does not necessarily establish an objectively serious medical need for immediate treatment that would be obvious to a layperson." *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016). Because the paramedic's only noted medical concern was pinpoint, non-reactive pupils, there is nothing about the paramedic's generalized recommendation that Sullins be transported to the hospital that was sufficient to alert Martin Sullins had an objectively serious medical need.

Moreover, Martin was not indifferent to Sullins's medical needs; he called an ambulance after Sullins complained of head pain. Martin knew Sullins and was familiar with his drug use before January 29, 2016. *Doc. 41-2 at 3*. Through his work as a Special Agent, Martin also knew methamphetamine's effects, which include non-reactive pupils and belligerent behavior. *Id. at 3-4*. Sullins admitted drug use to the paramedic, albeit he said it was two days prior. And Sullins concedes he acted belligerently towards Martin. Considering Martin's knowledge of the effects of methamphetamine combined with his familiarity with Sullins and the generalized findings in the paramedic's report, Martin's mental state was nowhere close to criminal recklessness in exercising his judgment that Sullins did not require

further medical treatment.[3]  The Court is not aware of any clearly established right Martin violated in declining further care, to the extent Martin made that decision.

Martin is entitled to qualified immunity.  As Sullins's official-capacity claims were dismissed on July 13, 2018, *Doc. 10 at 1*, Martin's Motion should be granted and this case should be dismissed.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Jason Martin's Motion for Summary Judgment, *Doc. 41*, be GRANTED.

2. Robert Paul Sullins's claims against Jason Martin be DISMISSED with prejudice.

3. This case be DISMISSED.

4. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation and accompanying Judgment would not be taken in good faith.

Dated this 21st day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] Martin contends he did not have authority to make decisions on Sullins's behalf, as Sergeant Timothy Gabbard with the Brinkley Police Department was Sullins's legal guardian. *Doc. 41-2 at 4*. Sullins contests this fact. *Doc. 44*.